## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IATRIC SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 1:14-cv-13121 |
| ) | |
| v. ) | |
| ) | |
| FAIRWARNING, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Iatric Systems, Inc. ("Iatric") alleges as follows for its complaint against Defendant FairWarning, Inc. ("FairWarning").

### NATURE OF THE ACTION

1.      In this action, brought under 28 U.S.C. § 2201 *et seq.*, Iatric seeks a declaratory judgment that a patent allegedly owned by Defendant FairWarning is invalid under the patent laws of the United States, Title 35 of the United States Code.

2.      Iatric also seeks a judgment that Defendant FairWarning violated the Lanham Act 43(a), 15 U.S.C. § 1125(a)(1), by making a false claim in bad faith to the marketplace that it invented patient privacy monitoring for electronic health records, that its product is protected by a valid patent, and by implying a false claim in bad faith that Iatric infringes that patent.

### PARTIES

3.      Plaintiff Iatric is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 27 Great Pond Drive, Boxford, Massachusetts, within this judicial district.

4.     Defendant FairWarning is, upon information and belief, a corporation organized under the laws of Florida having its principal place of business at 13535 Feather Sound Drive, Suite 600, Clearwater, Florida.

5.     FairWarning has done and does business in this judicial district, including business related to the claims asserted in this Complaint.  FairWarning's website states that its customers are hospitals and clinics across the U.S., Canada, and Europe.  FairWarning's website features a customer map that shows about a dozen of its customers are in Massachusetts.  FairWarning's website also indicates that one of its customer "success stories" is Boston Medical Center in Boston, Massachusetts.  Further, FairWarning's website indicates that Exultium is a reseller of FairWarning's products and that Exultium is located in the Boston, Massachusetts area.

JURISDICTION AND VENUE

6.     This action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Patent Laws of the United States, Title 35 of the United States Code; and the Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1).

7.     The Court has subject matter jurisdiction over the declaratory judgment patent claims under 28 U.S.C. §§ 1331, 1338(a), and 2201 with respect to an actual controversy arising under Title 35 of the United States Code.

8.     The Court has subject matter jurisdiction over the Lanham Act claims under § 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and 28 U.S.C. 1338.

9.     This Court has both specific and general personal jurisdiction over Defendant FairWarning.  Pursuant to due process and the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, Defendant FairWarning is subject to this Court's specific personal jurisdiction

because it: (1) caused and is causing tortious injury by acts within Massachusetts, specifically by asserting its claim of patent rights against products sold by Iatric to customers in Massachusetts; (2) caused and is causing tortious injury by acts outside of Massachusetts, specifically by asserting its claim of patent rights against products sold by Iatric to customers outside of Massachusetts, which result in harm to Iatric in Massachusetts; (3) regularly does or solicits business in Massachusetts; and (4) derives substantial revenue from goods used or consumed or services rendered in Massachusetts.  Defendant FairWarning is subject to this Court's general personal jurisdiction because it has continuous and systematic general business contacts in Massachusetts and the exercise of jurisdiction would be reasonable.

10.     Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as, *inter alia*, Defendant is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

11.     Iatric helps healthcare providers by delivering comprehensive healthcare IT integration.  Iatric's products and services focus on data integration, systems integration, and process integration.

12.     One of Iatric's software products, Security Audit Manager$^{TM}$ (or SAM$^{TM}$), monitors, identifies, and alerts health care facilities such as hospitals to potential violations of patient privacy (*e.g.*, under HIPAA, HITECH, Omnibus Rule, and Meaningful Use patient privacy criteria).

13.     Iatric was the pioneer of software that monitors, identifies, and alerts health care facilities to potential violations of patient privacy.  Iatric began selling Security Audit Manager$^{TM}$ in 2003, years before other entrants to the marketplace.

14.     Currently, there are only two significant vendors in the U.S. market for software like SAM™ that monitors, identifies, and alerts health care facilities to potential violations of patient privacy: Iatric and FairWarning.  KLAS is a company that seeks to improve healthcare technology delivery by honestly, accurately, and impartially measuring vendor performance for partners of healthcare providers.  Recent KLAS rankings show SAM, FairWarning, and Cerner as the competitors in the privacy breach software market.  However, Cerner's product is limited to the Cerner Electronic Health Record ("EHR") system whereas both SAM™ and FairWarning's products are used industry-wide and can work with any EHR.

15.     FairWarning's website claims that it "is the inventor, patent holder and global leader in patient privacy monitoring for electronic health records."  However, on information and belief, FairWarning was founded in 2005, years after Iatric began selling its SAM™ product.

16.     On information and belief, FairWarning claims rights under U.S. Patent No. 8,578,500 ("the '500 Patent") and has asserted those rights against products that are offered for sale by Iatric to Iatric's actual and potential customers.

17.     The '500 Patent is entitled "System and Method of Fraud and Misuse Detection." On its face, the '500 Patent states that it issued on November 5, 2013, that it was filed on March 19, 2007, and that it claims priority, at least in part, to an earlier patent application filed on May 26, 2006 and a provisional patent application filed on May 31, 2005.  These priority dates are years after Iatric began selling its SAM™ product in 2003.

18.     A true and correct copy of the '500 Patent is attached hereto as Exhibit A.  The '500 Patent lists Kurt James Long as the sole inventor.

19.     There is no indication on the face of the '500 Patent that Kurt James Long or his attorneys made the USPTO examiner aware of sales or offers to sell Iatric's SAM™ product prior to 2005.

20.     On December 10, 2013, FairWarning issued a press release.  This press release stated that FairWarning, "the inventor and world's leading supplier of privacy monitoring solutions for Electronic Health Records (EHRs) announced today that the United States Patent and Trademark Office has issued US patent 8,578,500 to FairWarning® Founder Kurt James Long.  The patent details the detection of common healthcare snooping patterns through the examination of audit logs. …  The allowed patent claims are for the detection of improper access of electronic patient health information through electronic health records and healthcare applications…  Kurt James Long, Founder and CEO [says that] 'The FairWarning® culture is to continually innovate through product research and development, and as part of our investments, we protect our inventions with trademarks and patents which benefit everyone who counts on FairWarning®, including our customers, resellers, partners, employees and shareholders.' FairWarning® was founded in 2005…"

21.     On December 11, 2013, FairWarning also sent an email to customers and potential customers.  The email stated that "FairWarning® has announced that the United States Patent and Trademark Office (USPTO) has issued the company a **crucial patent for detecting snooping, identity theft and other misuses of electronic patient information through the analysis of audit logs**.  This is an important intellectual property foundation for FairWarning®'s customers as they face more legal and compliance scrutiny than ever before and need certainty from their privacy vendors of choice.  As you evaluate privacy and security solutions, it is a best practice to **ensure your vendor of choice has a firm legal foundation for their solution**

**offering** such as patents and trademarks.   Investments in research & development, customer service innovation and intellectual property protections are amongst the reasons that over **1,200 hospitals and 4,800** clinics around the world trust FairWarning® for their Patient Privacy Monitoring solution.  …   The claims in FairWarning®'s patent, US 8,578,500 explicitly cover misuses of electronic patient health information accessed through electronic health records and healthcare applications…" (emphasis in original).

22.    FairWarning exaggerated the scope and validity of its patent, thus creating the false impression that FairWarning is the exclusive source of privacy breach monitoring software in the healthcare industry.

23.    FairWarning's December 2013 press release and email threaten Iatric's revenue from both its existing customer base and its pool of potential new customers.   Some of Iatric's customers and potential customers questioned Iatric about FairWarning's press release and email concerning the '500 Patent.   For example, at the time of the press release Iatric was trying to win business from a hospital system on the U.S. East Coast.   An employee at this hospital system saw FairWarning's December 10, 2013 press release and then contacted Iatric, noted FairWarning's press release, and asked "Any concerns from Iatric's standpoint?"   As another example, one of Iatric's customers and an existing SAM™ licensee is a hospital in California.   An employee at this hospital received the December 11, 2013 email from FairWarning.   That employee forwarded FairWarning's email to Iatric with the comment "What do you make of this email?"

24.    As a new entrant to the market in 2005, FairWarning must have known about Iatric's presence in the market and Iatric's SAM™ product.   FairWarning would have had to compete for business with customers who knew about SAM™ or in some cases were already using SAM™.

25.     FairWarning has had information about Iatric's products, including as a result of market competition between the two companies.  Over the last decade, some FairWarning customers have switched to Iatric's SAM<sup>TM</sup> product.  Similarly, some Iatric customers have switched to FairWarning's product.  Some of these customers were using Iatric's SAM<sup>TM</sup> product as early as 2004.  When customers switch from one company's product to the other company's product, it is common for those customers to share information with their new vendor about the prior product that they were using.

26.     FairWarning and Iatric have both attended various trade shows together where both companies presented information and demonstrations of their products.  For example, in 2005, Imprivata, a strategic partner of FairWarning based in Lexington, Massachusetts, attended a trade show where Iatric maintained a booth that provided messaging, literature, and product presentation for Iatric's SAM<sup>TM</sup> product.  Kurt James Long, founder and CEO of FairWarning, was a member of Imprivata's Advisory Board from 2004 to 2010.  In February 2006, FairWarning announced a strategic partnership with Imprivata.

27.     FairWarning's December 10, 2013 press release contains a threat of litigation to Iatric, the only other significant player in the market, and Iatric's customers: "as part of [FairWarning's] investments, we protect our inventions with … patents which benefits … our customers, resellers, partners, … and shareholders."

28.     FairWarning's emails and press releases have chilled and are likely to continue to chill Iatric's bids for new business or attempts to retain existing business.  FairWarning's December 11, 2013 email indicates that the '500 Patent is "critical" in the relevant market and advises customers that the '500 Patent "is an important intellectual property foundation for FairWarning<sup>®</sup>'s customers as they face more legal and compliance scrutiny than ever before"

and it is "best practice to ensure [customers'] vendor of choice has a firm legal foundation for their solution offering such as patents…"   Existing Iatric customers have already expressed concerns based on the emails and press release.

29.     Accordingly, a real, immediate, and justifiable controversy exists between Iatric and the Defendant, making a declaration of rights as between the parties necessary.

## COUNT I
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '500 PATENT

30.     Iatric incorporates by reference paragraphs 1 through 29 above as though fully set out herein.

31.     Iatric contends that all of the claims of the '500 Patent are invalid for failing to comply with the conditions and requirements for patentability set forth in the United States Patent Laws, Title 35 U.S.C., including specifically §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

32.     By way of example, and without limiting the allegations of this complaint, Iatric contends that sales and offers for sale of Iatric's 2003 SAM$^{TM}$ software product anticipate at least claim 1 of the '500 Patent.

33.     Iatric is entitled to entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring one or more of the claims of the '500 Patent invalid.

## COUNT II
## LANHAM ACT CLAIM

34.     Iatric incorporates by reference paragraphs 1 through 33 above as though fully set out herein.

35.     FairWarning made a false claim that it was "the" inventor of patient privacy monitoring for electronic health records when in fact Iatric pioneered patient privacy monitoring for electronic health records years earlier with its SAM$^{TM}$ product.

36.     FairWarning made a false claim that its privacy breach software is protected by the '500 Patent because that patent is invalid based at least in part on Iatric's SAM$^{TM}$ product, which was sold and offered for sales years before the application for the '500 Patent.

37.     FairWarning has also implied a false claim that Iatric, the only other significant player in the market, infringes the '500 Patent with Iatric's SAM$^{TM}$ product.  However, Iatric cannot infringe an invalid patent.

38.     Through its December 10, 2013 press release and December 11, 2013 emails to customers and potential customers, FairWarning has actively publicized its patent in the marketplace.  The press release and emails constitute commercial advertising or promotion about FairWarning's goods or services.   Fair Warning caused the statements to enter interstate commerce.

39.     FairWarning exaggerated the scope and validity of its patent, thus creating the false impression that FairWarning is the exclusive source of the product.  FairWarning's statements have actually deceived or are likely to deceive a substantial segment of the intended audience.

40.     FairWarning's claims were objectively baseless and made in bad faith.  Iatric's SAM$^{TM}$ product, alone or in combination with other prior art known to FairWarning, renders all the claims in the '500 Patent invalid.  Iatric's SAM$^{TM}$ product was sold and offered for sale roughly two years before the '500 Patent's priority date.  FairWarning knew about Iatric's SAM$^{TM}$ product and that it predated FairWarning's patent application.

41.     FairWarning's statements about the '500 Patent result in actual or probable injury to the Plaintiff.  FairWarning's emails and press releases have chilled and are likely to continue to chill Iatric's bids for new business or attempts to retain existing business.  FairWarning's December 11, 2013 email indicates that the '500 Patent is "critical" in the relevant market and advises customers that the '500 Patent "is an important intellectual property foundation for FairWarning®'s customers as they face more legal and compliance scrutiny than ever before" and it is "best practice to ensure [customers'] vendor of choice has a firm legal foundation for their solution offering such as patents…"  Existing Iatric customers have already expressed concerns based on the emails and press release.

42.     FairWarning's deceptive statements are material because they are likely to influence purchasing decisions of customers.

## PRAYER FOR RELIEF

WHEREFORE, Iatric respectfully requests this Court to grant the following relief, and any other relief the Court may deem proper:

a)      Enter a declaratory judgment in favor of Iatric declaring that the '500 Patent is invalid;

b)      Enter a judgment in favor of Iatric declaring that FairWarning violated the Lanham Act by making false claims in bad faith to the marketplace that it invented patient privacy monitoring for electronic health records, that its product is protected by a valid patent, and by implying a false claim in bad faith that Iatric infringes that patent;

c)      For temporary, preliminary, and permanent injunctive relief prohibiting Defendant, its agents, or anyone working for, in concert with or on behalf of Defendant from asserting Defendant's patent against Iatric and Iatric's customers and making further false claims

in the marketplace, including but not limited to false statements that Defendant invented patient privacy monitoring for electronic health records, false claims that Defendant's product is protected by a valid patent, and false claims that Iatric infringes that patent;

   d)  For an order requiring Defendant to correct any erroneous impressions persons may have derived concerning Defendant's or Plaintiff's competing products;

   e)  Award Iatric damages in an amount to be determined at trial;

   f)  Find that this case is exceptional within the meaning of 35 U.S.C. § 285 and/or 15 U.S.C. § 1117(a)(3), and award to Iatric its reasonable attorneys' fees, expenses, and costs incurred in this action; and

   g)  Award such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

   Iatric hereby demands a trial by jury.

Date:  July 25, 2014

Respectfully submitted,

IATRIC SYSTEMS, INC.

By its attorneys,

/s/ Brandon T. Scruggs

Lisa M. Tittemore (BBO # 567941)
Brandon T. Scruggs (BBO # 672541)
SUNSTEIN KANN MURPHY & TIMBERS LLP
125 Summer Street
Boston, MA 02110-1618
Tel:  (617)  443-9292
Fax:  (617)  443-0004
Email:  bscruggs@sunsteinlaw.com
*Attorneys for Plaintiff Iatric Systems, Inc.*

04035/05001 2123873.1